and Associates, Arthur M. Kohler, and Rosanna Fox. I'd like to reserve three minutes for rebuttal if I may. That's done and I should have said right at the outset this is the number 20-2539. Okay, your time for rebuttal is reserved. Thank you, Your Honor. The question before us today is simply whether the arbitration provision was erroneously held to be invalid by the district court. And we say it was. We say the terms of the agreement are sufficiently clear and unambiguous. That agreement should have been enforced and recognized as a valid arbitration agreement. Can I just start out right going at you on jurisdiction because I'm a little troubled by a couple things. First off, you've asserted CAFA jurisdiction here as one of the bases for being in federal court and having removal. Are you prepared to say on the record that you're not going to be seeking to enforce the class action waiver portion of your arbitration agreement with the plaintiff? No, Your Honor. Okay, then I'm having a hard time seeing how you can say we've got jurisdiction here because this is a class action at the same time you're wanting to hold in your back pocket an assertion that this can't be a class action. It could never be a class action because there's a waiver and we're going to enforce it. How does that work? Well, Your Honor, let me address that in two ways. First, looking solely at the individual claims in this case, the plaintiff has made a claim for restitution or recovery of the amounts that she's paid, claiming that $15,000 in the fees that she's clients were illegal and therefore could not be paid and she's seeking that money back. So that money and the bank fees, I think is well over $15,000. She's entitled to treble damages as a result. Yeah, so that gets you to about 46,000. Now we're arguing about diversity jurisdiction, not CAFA, and I was asking you about CAFA, but if you want to talk about diversity, that's okay too because I'm wondering about that as well. Yeah, so Your Honor, I'm sorry, under diversity with the punitive damages and the statutory penalties that the plaintiff claims to be entitled to in this case, I think we easily reach the $75,000 jurisdictional bar for diversity. So that's one point. When you say the statutory penalties, are you talking about the trebling? We're talking about the treble damages. We're talking about, and that's her entitlement under the Consumer Fraud Act. Right. So that gets you to about 46,000 and then there's a demand for costs and that's capped, as I understand it, at about 30%. So you add that on, it gives you another 12, something like that. You're still in the mid-60s. You fall short of 75,000. How do you get past 75,000 with trebling, with costs, with everything else? We're talking about less than $15,000 in compensatory here. And Your Honor, she has also requested punitive damages in this case. Punitive damages in New Jersey are entitled to up to five times your compensatory damages. That's on top of trebling? That's in addition to trebling? That's in addition to the compensatory damages. So if she has $15,000 in compensatory damages, just approximately, I think she has more than that. And if you were to apply a punitive damage multiplier on top of that, you would easily exceed $75,000. Okay. All right. Well, let's move on. I understand your position. And let me ask you, if I might, first off, about choice of law, because there's been some arguing about that. Why was the district court under the impression that both parties agreed that there was no conflict of law? Your Honor, I think the point made was whether there was a conflict of law in terms of a public policy in Delaware or New Jersey that somehow was inconsistent. The law in both New Jersey and Delaware is consistent to the degree that both states recite that they will enforce contracts that are clear and unambiguous. They will enforce arbitration provisions that are clear and unambiguously written. So to that extent, the law of both states was consistent and there was no conflict. Well, the district court was left with the impression, and indeed, I think not surprisingly left with the impression that you folks were saying there's no difference, there's no practical difference between them. In the district court, the argument was made, from the opening brief you had there, even if this court were to apply New Jersey law to determine the existence of a valid agreement to arbitration, which this court should not do, the result would be the same. If you tell the district court it doesn't matter which law you apply, you're going to end up in the same place. Aren't you telling the district court there's really not a conflict of law? Either template is going to get you to the same spot. Your Honor, let me answer that. I agree that both New Jersey and Delaware law, for the reasons I've said, that they would enforce contracts, whether they're arbitration contracts or other contracts, if they are clearly unambiguously expressed so that the court can make a determination there has been mutual assent to the terms, they're not unconscionable, and those kinds of state law rules, those rules are consistent in both Delaware and New Jersey. Before the district court rendered its decision, we had no reason to believe that the district court would apply particular rules in New Jersey that were so special and has applied to arbitration provisions that it would invalidate our agreement. And in fact, we believe... So your argument is if we'd known you were going to interpret New Jersey law the way you did, we would have told you there's a difference between New Jersey and Delaware law. Your Honor, that we certainly were surprised by the decision, but I think we did argue in the district court that Delaware law should be applied, it was the contractual choice of the parties, and the district court should have respected that choice. That's... Well, you did clearly make that argument. I'm just trying to figure out whether you waived any argument with respect to there being a conflict of laws. I know you wanted Delaware law to apply because it was in the contract, but I think I got your position on that point. I do have some substantive questions, but I should let my colleagues weigh in here, if they'd like. Judge Mady or Judge Bolton, anything you want to ask before I ask him anything else? I'm good. I did have a question, and it goes to the issue of Delaware law. If you have argued in your brief that the district judge should not have decided the issue of the scope of the arbitration clause, because under Delaware law, if you incorporate the AAA rules, they specifically require that the issue of arbitrability be decided by the arbitrator. That was never raised below. Isn't that waived? Your Honor, I will say that we argued that Delaware law should be applied for the reasons that it was the party's choice in the agreement. But did you ever challenge the district court's decision that it was determining the question of that that was, under Delaware law, something that was for the arbitrator to decide? We did not specifically do that, Your Honor. You're correct. However, I don't think it's waived because we did make the argument that Delaware law, which would have respected that reference in the contract, should apply. And we think there is ample authority in this court's case law to treat it as not having waived or to consider it on this appeal, because it does raise a question of importance, and it's manifestly unjust not to consider it. All right. Mr. Pinto put before us, and you responded very briefly to the Delaney decision that came out at the end of December. In your response, you say, hey, look, they've said it's prospective only, so don't pay attention to that. In essence, I mean, I'm shorthanding what you said in your letter. But I really am curious, and I'll be asking Mr. Pinto this. It's no gotcha question here. I'm just kind of wondering myself, is this, would applying that decision actually be retroactive in this case? It's true that the court said this is a prospective matter, but it seems to be saying that in the context of this is prospective as to obligations on attorneys under the rules of professional conduct, that that's their concern, that they don't want lawyers who haven't heard this before to face disciplinary charges. That's the piece that's prospective. But as to the question of whether or not the arbitration clause itself is adequately explained in a professional services agreement, is there a concern about retroactivity when we're talking about applying it in a case that's before the district court? Does Delaney still have force in that context? Your Honor, I have looked at the Delaney opinion. I've read it several times, and you are correct. It is a prospective only decision. I don't think it's correct to say that it's prospective only because the court did not want to subject attorneys to professional discipline. I think it's prospective because the court realized that many law firms have incorporated in their engagement agreements similar arbitration provisions, and that the court did not want to disrupt those existing arrangements or potentially have to undo litigation or disputes that were then being engaged in by the law firms and clients. I think that's a reason, and that's a valid reason, not to disrupt those. Okay. Gotcha. Let's then take it as given that we're not going to apply Delaney. We're going to be looking at the pre-Delaney law. You've made the argument that the district court misapplied Remicade and Moon. Moon lays out a three-step process. Do you agree that that three-step process is the right one and that it's binding on us? That's what we need to apply. It's what the district court was supposed to be applying? Your Honor, I agree that Remicade and Moon both applied this three-requirement test, which derives from Attleese, the New Jersey 2014 decision. I don't think the question of whether those rules met the FAA or inconsistent with the FAA or violated Kindred Nursing or LAMS Plus was ever before the Moon court. In fact, I don't think Kindred Nursing was even argued when Moon was argued. Are you suggesting that this panel can overrule Moon by saying, yes, it's true that the court looked at Attleese, applied it, analyzed it, and applied it, but the entire time, that was wrong because it's all violative of the FAA? We could effectively overrule Moon. Your Honor, I don't think you need to overrule Moon because Moon is consistent with New Jersey law. Okay, good. That's what I'm trying to get you to do. I asked you, do you agree that that's binding and that's what should be guiding us? Moon's construction of New Jersey law, and it's consistent with our position in this case, is if you have an arbitration provision that includes a limiting condition, as Moon did, which is we will arbitrate any disputes arising out of our agreement, then you get to the Moon result, which is the parties basically limited the scope of their arbitrations to contract issues and not statutory claims. Our provision in this case had no such limiting provision. It only said, very simply, any disputes between the parties that could not be resolved after allowing a 180-day period for negotiation, any disputes would be arbitrated. I got your argument. I understand your Adelaide's argument. I'm trying to get you to address the Moon argument. You're saying Moon and Adelaide are not in conflict. That's what I hear you saying, but Moon lays out three steps and the district court purported to apply those three steps and said, look, you didn't meet step one. You don't have anything in there with respect to what the general subject matter that's being covered is. You don't have anything in there with respect to the types of claims being waived. I just want you to take us through, I know you're on our time now, you're past the time we gave you, but I do want you to walk through Moon and address what the district court said. At step one, the court said, Moon tells us you have to describe what are the overall general substantive area that the arbitration clause covers and it doesn't do that. What's your answer to that? Your Honor, the answer is that if you want to limit the scope of the types of disputes that are arbitrated, you write that into your agreement. You condition it on, for example, all disputes relating to our agreement. If you want to make sure that your contracting party understands that any dispute, no matter what, is subject to arbitration, then you write the clause exactly the way it was written in this case. That is, any dispute between the parties shall be subject to arbitration. So in applying Moon, is your position that the statement any dispute satisfies step one of Moon? Yes, Your Honor. Is that what you're telling me? I'm trying to steer you into Moon, right? There's three steps there. So is your argument, when we say any dispute, that is step one. It's speaking to the general substantive area. It's anything, anything that we're fighting about. Yes, Your Honor. Okay, now then answer Mr. Pinto's argument, which is it can't possibly mean that because we've made an argument, which if taken at face value, is that there was fraud here. So nobody could be considered to be willing to do that. So that's, that it's inadequate. What's your response to that? Your Honor, I have a couple of responses. First of all, the district court below looked at that argument and concluded that, you know, the face of the agreement, you know, is what it is. She read it. She must be presumed to have understood it. She initialed every page. And there's nothing other than her say-so that I didn't understand this or nobody told me. And those allegations do not suffice to show any kind of fraud in the inducement. If she is claiming beyond that, that other terms of the professional legal services agreement are fraudulent, because they are, for example, they violate the terms of New Jersey statutes. All of those disputes are within the terms of the arbitration provision, and therefore, it would be a result of arbitration. Okay. All right. Good enough. Judge Mabee or Judge Bolton? Anything? Okay. Well, we'll have you back on rebuttal, Mr. Gentile. Thank you. Mr. Pinto, your argument on behalf of the appellee, please. There are two main arguments in the case, which the principal main arguments in the case are the scope of the arbitration clause and whether or not Attlees or Garfinkel somehow are preempted by the FAA. The latter issue— Let me just real quick ask you about jurisdiction. You've never raised an issue about jurisdiction, so I take it your assertion is, yeah, we've got diversity jurisdiction here because our amount in controversy is going to exceed $75,000. Am I correct about that? Well, I didn't object to jurisdiction because he brought it under and I may have— Since this is a prospective class action and he brought it under diversity, I mean, brought it under CAFRA and he's admitting that it's got to be at least a $5 million case, there would be jurisdiction, but diversity— There's certainly diversity of citizenship, but the $75,000 issue, I did not bring up because I considered, since he brought it under CAFRA, that would supersede $75,000. Her individual claim probably doesn't exceed $75,000, but that wasn't the basis of the jurisdiction. That wasn't argued though, right? If I'm correct, that wasn't argued? No, you are correct. The diversity jurisdiction itself was not argued and neither was the CAFRA jurisdiction. All right. And it was not briefed either. Yeah. Okay. Diving into the merits here, would you answer the question that I asked Mr. Denteel about whether Delaney is applicable here? The court is pretty explicit and says, because the professional obligation we now impose may not have been reasonably anticipated and would unsettle expectations, apply this new mandate prospectively. The way I read Delaney is that it is based upon the fact that attorneys are held to higher standards, and that's always been the case. There's no perspective application of the fact that attorneys are held to higher standards when dealing with the public. That's true, Mr. Petko, but the Supreme Court goes out of its way to say, this is not perhaps anticipatable, what we're saying here. It's changing things and we don't want to unsettle reasoned expectations, so it's prospective only. They come right out and say it. So what I'm trying to get is, what's your argument that Delaney actually should be applied here in spite of what the Supreme Court of the state of New Jersey says? I think the prospective application of Delaney has more to do with the issue of incorporation of multi-page arbitration rules into a retainer agreement than it does with the lawyer's obligation under the agreement itself to make sure that the language is clear and understood by the client. The fact that the language has to be clear and understood by the client is not what is prospective. No, that isn't what's prospective, and to the extent you're talking about that, that's not new, and I don't think Mr. Gentile is arguing it's new. I think what's being argued is new is Delaney says, look, in the context of a professional services agreement with the lawyer, it's not enough to say the things that even would be enough in other agreements, that would pass muster in a consumer contract, still not enough because you have fiduciary responsibilities and they require you to sit down and talk it through and do more. That's how Delaney seems to read. Is that not a fair reading of it? I agree that there's a fiduciary obligation. I've argued even before Delaney that that the attorney has an obligation under the RPCs to make sure the client understood it and that there was no questions. That's not what was argued here. What was argued here, what you've argued and you argued effectively in the district court, you won, was that this doesn't pass muster under Moon and Adelaide. Right? That's correct. It does not pass muster under Moon and Adelaide. I want you to address, assume for the sake of discussion, we weren't going to apply Delaney. The controlling rules here are underlying everything Adelaide and then the third decision, this court's decision is in Moon and Remicade. If that's the template we're applying here, I would like for you to very specifically answer the assertion that Mr. Gentile has made that the district court got it wrong because we did satisfy Moon and we did satisfy Adelaide. We spoke broadly in that arbitration provision specifically so we wouldn't tie ourselves to the agreement alone and have the additional responsibilities that go with that. So we spoke as broadly as we could when we said any dispute and that satisfies step one of Moon, that should satisfy step two of Moon and step three of Moon of course is satisfied because we explained what was being, we adequately explained you're giving up a right to a jury, you're giving up rights to discovery. We did all those things and under Adelaide and Moon that should be enough. Where in that three-step process is his analysis wrong? Well, number one, the term any dispute is not defined. He's assuming that if you say any dispute that means anything and even in his brief he says that implicitly it has to mean claims related to the agreement as well as arising out of the agreement because they signed an agreement, therefore what else could they have been talking about? Well, I don't see how you can say that claims related to the agreement is implicit in the term any dispute especially since the language of this arbitration clause in the first sentence which is paragraph 32 of the arbitration clause says it doesn't mention any dispute. The first sentence just says each party agrees to enter into good faith discussions and if needed allow up to 180 days to seek resolution prior to either party filing a formal complaint. That doesn't say anything. The second sentence... Why doesn't that clearly, why isn't that clear enough to an ordinarily responsible intelligent person to say look let's talk about it before we start going at each other and trying to get a third party in to decide our dispute. We are going to talk first and then it says quote any dispute that cannot be resolved between the parties after 180 days must be resolved by binding arbitration. That replaces the right to go to court and a judge and jury. What is, what's confusing about that? What's less than clear about that? Especially in light of Attlee's. You have to look at the next sentence where it says this agreement shall be submitted for binding arbitration. That clause has to be read hand in hand with any dispute. If it says this agreement shall be submitted to binding arbitration, that is what is being submitted to binding arbitration, this agreement. So it's any dispute in this agreement. It is not any dispute that arises outside of the agreement which is what Remicade said. What does that do? When you limit it in the way you just said, what's the legal effect of that under Moon? Now you say they've said it in a way that ties it to the agreement. What's the result of that under Moon? Under Moon, does that specify the subject matter or the substantive issues? Yes, it limits it to this agreement. Any issues under this agreement, this agreement is what we're going to arbitrate. The types of claims, it does not satisfy the types of claims because it doesn't say claims outside of the agreement, which are statutory claims. It limits it to this agreement. And as Remicade said, there's no, Remicade used the words, we're not saying that just because a contract exists then but-for causation applies. You have to, the language that Remicade used had to do with the agreement itself. What was dispositive was whether you had to refer to the agreement or rely on the agreement in order to arbitrate these claims. You did not have to do that because these claims arise outside of the agreement itself. You don't have to, yes, there is an agreement, but that agreement doesn't affect the conduct that is made illegal under these statutes. All right. Well, I think I have your position. Judge Mady or Judge Bolton, do you have any questions you'd like to ask? No. Okay. Well, thank you for your argument, Mr. Pinto. Mr. Gentile, you had three minutes for rebuttal. Thank you. Let me address the last points Mr. Pinto raised, which is the reference in the third sentence that the agreement shall be submitted for binding arbitration somehow limits the meaning of any disputes between the parties. First of all, I don't think it does. The all-encompassing language in the first, in that sentence about any disputes between the parties is not qualified in any way. There are no exceptions to it. Well, that's what he's, I mean, you're just rejecting his reasoning without reasoning. He says, no, that's the only way to read any dispute is in light of the assertion. If it says it's going to go to arbitration and then the next sentence says this agreement shall be submitted in accordance with the rules, it's saying this is the agreement. This is the thing that's subject to arbitration. Why is that not a perfectly reasonable reading of this? Well, let me answer that, Your Honor, in two ways. First, the reference to the AAA rules, which is clearly in this arbitration provision. If you read the rules, the way you file a dispute or submit a dispute to arbitration is you submit the agreement that you've made to arbitrate to the AAA. So in a sense, the inclusion of that language is no more than what is consistent with the AAA rules. So that's what you could have said. I mean, you could have it could have been written. Any dispute will be submitted to binding arbitration and the arbitration will be held in accordance with the AAA, et cetera. But you didn't frame it that way. You guys were the writers of this. And the way you wrote it was this agreement will be submitted. You chose the language. Why shouldn't you have to live with it and then have the consequences of living with something that's now tied to the agreement? Because that actually has legal consequences under Adelaide, doesn't it? Your Honor, yes, it does. And it also has consequences under Remicade. Under Remicade, the parties did include the language. Any disputes arising out of or from this agreement shall be submitted to arbitration. And now the inclusion of the phrase relating to the agreement was the subject of litigation that lasted for years. The parties, I'm sure they thought they were being clear, but it turned out they weren't. And the court in Remicade said, we construe the language here to mean that any dispute that has reference to the party's agreement or cannot be resolved without reference to the party's agreement is within the term of within the consent to arbitration. And that's no more than what we're claiming in this case, that any dispute between the parties has to include any dispute that arises out of the party's relationship, their agreement. Well, hold on. Let me ask you this. Assume just for the this next moment or two that we thought when you use the word disagreement here, you had tied it to the agreement. If that were the case, what is the effect of Adelaide? What does that mean for the enforceability of this? Well, Your Honor, then we're back to the Adelaide rules, which and specifically the rule in Adelaide is because I think we have satisfied the rule about explaining the differences between an arbitration and a court proceeding. Adelaide has a specific requirement that there has to be an express waiver of statutory rights, which is not the case for any other contract in New Jersey, not the case for any contract in Delaware. That's where you get into your preemption argument. In other words, if we were to read this to say disagreement and those words now tie it to the agreement, then you would agree that the district court had it right that you didn't have an adequate arbitration agreement here. But your argument is that under that runs afoul of the FAA. Have I followed your line of reasoning? Yes, Your Honor. So far, you have. Okay. All right. Well, I again, I've taken everybody's time here and I apologize if there's something further you wanted to say to wrap up. Well, first, let me ask my colleagues, Judge Mayer, Judge Bolton, or is there anything you want to ask Mr. Gentile based on what we've been talking about? I don't have any. Okay. Judge Mayer shaking his head no. So I give you a moment or two to wrap up, sir. Your Honor, thank you. One more thing I would say is that had the district court applied Delaware law, Delaware law is clear that the arbitration provision would have been held to be valid and would have been enforced. And we cited Delaware precedents in our supplemental brief pursuant to the court's request. There are no special rules the way there is under Adelaide's in Delaware. It's enough that the parties are clear in their expression of the agreement to arbitrate. Once that happens, the court enforces it. It doesn't matter whether it's a, you know, any other kind of waiver of right, as long as it's clear and unambiguous, the courts enforce it. The word any has been Mr. Gentile. Thank you, Mr. Pinto. We appreciate the argument today. We've got the matter under advisement.